## WALSER v. INTERNATIONAL UNION BANK.

### In re COHN.

District Court, S. D. New York. November 4, 1926.

Banks and banking ⊜⟹116(1)—Knowledge of bank cashier, paid co-conspirator of bankrupt, of financial difficulties and probability that preference would result, held not imputed to bank (Bankruptcy Act, § 60b [Comp. St. § 9644]).

Where assistant cashier of bank, for a monetary consideration, conspired to facilitate unlawful operations of bankrupt, and after allowing substantial overdrafts on two dummy accounts of bankrupt, and being threatened with personal liability therefor by officers of bank, obtained cash payment from bankrupt with knowledge of his financial difficulties, and probability that preference would result, *held*, his knowledge could not be imputed to the bank, so as to charge it with knowledge necessary to make the payment to it an unlawful preference, under Bankruptcy Act, § 60b (Comp. St. § 9644).

In Equity. Suit by Kenneth E. Walser, trustee in bankruptcy of Harry A. Cohn, against the International Union Bank. Bill dismissed.

Greenbaum, Wolff & Ernst, of New York City (E. S. Greenbaum, of New York City, of counsel), for complainant.

Morris Hillquit, of New York City, for defendant.

AUGUSTUS N. HAND, District Judge. This is a suit by the trustee in bankruptcy of Henry A. Cohn to recover alleged unlawful payments to the defendants of sums aggregating $23,725, on the ground that they were preferential.

The bankrupt had checks delivered to one Wollenweber, the assistant cashier of the defendant, which turned out to be bad, and the assistant cashier allowed overdrafts against them on Saturday, October 3, 1925, to the amount of $23,725. These overdrafts were by checks on accounts of Rappina and Barnet, who were dummies for Cohn. The latter had no account with the bank at the time

of the transaction. An earlier account had been closed because it was unsatisfactory, and no official of the bank, except Wollenweber, knew of the dummy accounts. Cohn paid to Wollenweber, or for his account, some $4,500, in order that he might have Wollenweber's assistance in "check kiting." Two of the checks delivered to Wollenweber to balance the overdrafts were carried as cash items, and the third was put through the Irving National Bank and returned unpaid. When Rodriguez, the vice president and manager of the defendant, learned of the overdraft on Monday, October 5th, he asked Wollenweber for an explanation, who said he was protecting a friend.

Thereupon Rodriguez told Wollenweber, if he did not make good the indebtedness, he would suffer the consequences. Wollenweber then secured repayment from Cohn on October 6th, who obtained funds by selling diamonds which he had. A petition in bankruptcy was filed on October 8, 1925, and adjudication and the appointment of the trustee followed. The question before me is whether the defendant, at the time of receiving the repayment, had reasonable cause to believe that the transfer would effect a preference; otherwise, the case does not come within the provision of section 60b of the National Bankruptcy Act (Comp. St. § 9644).

I do not regard notice to Wollenweber of Cohn's insolvency as notice to the defendant. Wollenweber was a co-conspirator, facilitating the unlawful operations of Cohn for hire. He was not engaged in the bank's business when he helped a third party to rob it, or met the drastic demands of its officers to secure repayment of the illegal withdrawals. He was protecting himself from ruin, rather than acting for the bank. His knowledge of Cohn's condition cannot be imputed. American Surety Co. v. Pauly, 170 U. S. 133, 18 S. Ct. 552, 42 L. Ed. 977.

Rodriguez testified that he was never informed where the repayment secured through Wollenweber came from, or that Harry A. Cohn was in financial difficulty. On the other hand, Wollenweber said that on October 6th he told Rodriguez that Cohn was disposing of all he had to cover the bank and was in financial difficulties, had left the state, and was in Newark, N. J. Undoubtedly Rodriguez found out that the checks in the possession of the bank were bad, and Kaplowitz, the cashier, had learned the same thing. Rodriguez did not tell the truth to District Attorney Pecora, when he was investigating the case, and said that he had no knowledge of the transaction. His claim that he said this to protect Wollenweber from publicity does not seem a very likely explanation, especially when he continued to reiterate the story when confronted by Wollenweber. He was apparently using every means to force Wollenweber to secure repayment of the money, and I cannot believe that he was mainly governed by solicitude for the latter's good name. It is more likely that he denied knowledge, because he was frightened and to prevent further investigation of the whole transaction. He was not under oath, and hoped to avoid additional trouble.

It seems quite clear that, but for the attempt to Rodriguez to hide the transaction, it would be quite impossible to find that he had reason to believe that the money came from Cohn and that the payment was preferential. Cohn is a convict, serving his sentence because he embezzled diamonds left in his hands on consignment. His oath ought not to outweigh the positive denials of Rodriguez in a case where he might secure favor from his creditors by helping to reclaim assets and by assisting the trustee. The most that is established is that Rodriguez and Kaplowitz knew the bank had bad checks, one of which, at least, bore the indorsement of Harry Cohn. That is different from reasonable cause to believe that the payment was preferential. The misstatement to the district attorney must be held to be the equivalent of knowledge that Cohn got the money from the overdrafts, that the money was repaid by him, and that he was insolvent, or it can have no direct bearing on the issues. I do not think the misstatement leads to these conclusions.

The bill is dismissed, without costs.